HENRY D. MARCUS *v.* IRENE DUPERRY
(14394)

PETERS, C. J., CALLAHAN, COVELLO, BORDEN and BERDON, Js.

Argued June 9—decision released August 12, 1992

*Henry D. Marcus,* with whom, on the brief, was *Theodore A. Lubinsky,* for the appellant (plaintiff).

*Irene M. DuPerry,* pro se, the appellee (defendant).

BORDEN, J. The plaintiff, Henry D. Marcus, an attorney seeking collection of legal fees from the pro se defendant, Irene DuPerry, appeals from the judgment of the Appellate Court that he be awarded only nominal damages. We agree with the plaintiff that he was entitled to his full contractual damages, and therefore affirm in part and reverse in part.

The following facts were stated in the Appellate Court opinion, *Marcus* v. *DuPerry,* 25 Conn. App. 293, 593 A.2d 163 (1991). On or about September 20, 1985, the defendant retained the plaintiff to represent her in a personal injury action. On September 21, 1985, the parties executed a retainer agreement with respect to that action that provided for a contingent fee of 33.33 percent of the recovery plus the plaintiff's expenditures on the defendant's behalf.[1] The relationship between the parties deteriorated, and in August, 1986, the

---

[1] Although the defendant denied that she had ever discussed the terms of compensation with the plaintiff, she acknowledged that her signature was on the final page of the contract that was introduced into evidence. The plaintiff and his secretary testified that the first two pages of the original contract had been discarded when the contract was modified in October, 1986. The plaintiff also testified that the original contract had provided a contingent fee of one third of the tort recovery, and the defendant did not controvert this testimony.

defendant discharged the plaintiff. On October 29, 1986, the plaintiff, in response to the defendant's overtures, once again agreed to represent her. The plaintiff thereafter represented the defendant in the trial on the personal injury action, which resulted in a jury verdict in DuPerry's favor. Three weeks after that judgment was rendered, the defendant again discharged the plaintiff.

The plaintiff then commenced this action for legal fees. He claimed that he had rendered professional services for the defendant in her tort action. He also claimed that he had represented her in the contested claim for no-fault reparations arising from the same accident that had produced the tort suit, and in a threatened eviction from her home for nonpayment of rent.

A default was entered against the defendant for failure to plead, and the trial court conducted a hearing in damages.[2] At the hearing in damages, the plaintiff introduced a second retainer agreement covering the plaintiff's representation of the defendant in her personal injury action. This agreement provided that the plaintiff would be paid either $125 per hour for court time for his past and future services and $100 per hour for office time, or 33.33 percent of the recovery, which-

---

[2] Practice Book § 367, entitled "Notice of Defenses [Judgments]," provides: "In any hearing in damages upon default suffered or after a denial of a motion to strike, the defendant shall not be permitted to offer evidence to contradict any allegations in the plaintiff's complaint, except such as relate to the amount of damages, unless he has given notice to the plaintiff of his intention to contradict such allegations and of the subject matter which he intends to contradict, nor shall the defendant be permitted to deny the right of the plaintiff to maintain such action, nor shall he be permitted to prove any matter of defense, unless he has given written notice to the plaintiff of his intention to deny such right or to prove such matter of defense."

In the present case, the defendant never filed any notice of defenses. The plaintiff, however, indicated at the hearing in damages that he would not object to discussion of the validity of the retainer agreement, because he did not want to take unfair advantage of a lay person acting pro se. He maintained that position on appeal in this court.

ever was greater, plus his out-of-pocket expenses. The last page of this agreement contained the defendant's signature. Next to her signature, the date "9/21/85" was crossed out and the date "10/29/86" was added. At the hearing in damages, the plaintiff and his secretary both testified that the defendant had orally agreed to the terms of this retainer agreement and had directed the plaintiff to attach the signature page from the original September 21, 1985 agreement to this modified agreement.[3] The defendant testified that she had never discussed the terms of compensation with the plaintiff, that she had not agreed to this modified arrangement and that she had not authorized the plaintiff to attach the signature page of the old agreement to the new one.

The trial court found that the document sought to be enforced was void for lack of consideration, because "a promise to do that which one is already bound by his contract to do is not a sufficient consideration to support an additional promise by the other party to the contract." *Blakeslee* v. *Board of Water Commissioners*, 106 Conn. 642, 652, 139 A. 106 (1927). The trial court

---

[3] We note with some concern that in a letter to the local grievance panel, after the defendant had filed a grievance against him, the plaintiff stated that "at the client's request my staff, somewhat inexperienced at the time, without my knowledge, acceded to her instructions to redate her earlier signature instead of having her sign at the end of the new amended agreement which I had already signed. Due to pressing business resulting in my inadvertence, the manner in which this had been handled was not noticed by me until much later . . . ." Similarly, the reviewing committee reported that at its hearing on the grievance, Marcus had "contended that he had no knowledge of the signature procedure, until he was discharged a second time by the Complainant for an unrelated reason." In the trial court, however, the plaintiff testified that the defendant had instructed both him and his secretary to redate and use the earlier signature, and that he had instructed his secretary to do so. The plaintiff further acknowledged that he had been the one who had crossed out the first date and added the second on the signature page. These discrepancies in the plaintiff's stories are relevant to the issue of credibility, which is not before us and will be considered by the trial court on the remand.

therefore concluded that the plaintiff was unable to sustain his burden of proof as to the amount of damages he should receive. The trial court also denied the plaintiff's claims in quantum meruit, noting that "an attorney will not be permitted to recover compensation based on an express contract or on quantum meruit where the terms of the underlying agreement upon which his claims are based are such that they may adversely affect the performance of his professional responsibilities and where the fee agreement 'might govern the course of action' pursued by the plaintiff in his representation of his client. See *McCarthy* v. *Santangelo,* 137 Conn. 410, 413 [78 A.2d 240 (1951)]." Accordingly, the trial court rendered judgment for the defendant.

The plaintiff appealed to the Appellate Court, which reversed the trial court's judgment, but directed the trial court to render judgment awarding only nominal damages. *Marcus* v. *DuPerry,* supra. The Appellate Court reasoned that, because matters of professional conduct may properly be considered in determining damages under an attorney's fee arrangement, the trial court did not abuse its discretion in denying the plaintiff substantial damages. Id., 297. Because the defendant's liability had already been conclusively established by the rendering of the default, however, the court held that the plaintiff was entitled to at least nominal damages. Id., 298. The Appellate Court reversed the judgment of the trial court, and remanded the case with direction to award damages of one dollar to the plaintiff. We granted certification[4] and now reverse in part.

[4] The grant of certification was limited to the following issues:
"1. Was the retainer contract between the parties unenforceable for lack of consideration?
"2. Was the retainer contract between the parties unenforceable as contrary to public policy?
"3. Was the plaintiff entitled to a quantum meruit recovery?" *Marcus* v. *DuPerry,* 220 Conn. 927, 598 A.2d 366 (1991).

We disagree with both the trial court and the Appellate Court, and conclude that it has not been shown that the second contract violated any norm of professional conduct. The plaintiff is therefore entitled to more than nominal damages. Because of the trial court's failure to resolve certain disputed issues of fact, the case must be remanded for a new hearing on those issues.

The trial court held that the second contract was void for lack of consideration, because on the date when it was purportedly made the plaintiff was already under an existing obligation to represent the defendant in her personal injury claim. This holding presupposes that the first contract was still in effect. Both parties acknowledged in the trial court and before this court, however, that the defendant had discharged the plaintiff two months before the second contract was purportedly made. Therefore, at the time of the October, 1986 agreement, the plaintiff had no existing contractual obligation to the defendant. The close judicial scrutiny that we apply to contracts made during the attorney-client relationship; see *DiFrancesco* v. *Goldman,* 127 Conn. 387, 392–93, 16 A.2d 828 (1940); would therefore not be appropriate in this case. Because the plaintiff was not then representing the defendant, he had no fiduciary obligation toward her that would bar him from negotiating with her. Finally, unlike *McCarthy* v. *Santangelo,* supra, it has not been shown in this case that either of the purported contracts might have adversely affected the performance of the attorney's professional responsibilities.[5]

---

[5] See General Statutes § 52-251c, which provides in pertinent part: "(a) In any claim or civil action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, the attorney and the claimant may provide by contract, which contract shall comply with all applicable provisions of the rules of professional conduct governing attorneys adopted by the judges of the superior court, that the fee for the attorney shall be paid contingent upon, and as

There was conflicting testimony as to whether the parties had entered into the alleged second contract. The trial court recited the conflicting testimony, but made no finding of fact to resolve the dispute.[6] This question must be resolved before the amount of damages may be determined.

If, on the remand, the trial court finds that the purported October 29, 1986 agreement was in fact made, then the plaintiff will be entitled to his contractual damages of $125 per hour for court time for his past and future services and $100 per hour for office time, or 33.33 percent of the defendant's tort recovery, whichever is greater, plus his out-of-pocket expenses. He will also be entitled to quantum meruit recovery for the other, noncontractual services that he rendered to the defendant.

a percentage of: (1) Damages awarded and received by the claimant; or (2) settlement amount pursuant to a settlement agreement.

"(b) In any such contingency fee arrangement such fee shall be the exclusive method for payment of the attorney by the claimant and shall not exceed an amount equal to a percentage of the damages awarded and received by the claimant or of the settlement amount received by the claimant as follows: (1) Thirty-three and one-third per cent of the first three hundred thousand dollars; (2) twenty-five per cent of the next three hundred thousand dollars; (3) twenty per cent of the next three hundred thousand dollars; (4) fifteen per cent of the next three hundred thousand dollars; and (5) ten per cent of any amount which exceeds one million two hundred thousand dollars."

Because the earliest version of this statute applied to claims arising out of injuries occurring on or after October 1, 1986; see Public Acts 1986, No. 86-338; and because the defendant's injury occurred on April 4, 1985, this statute by its terms is inapplicable in this case.

[6] The court noted that Rule 1.5 (c) of the Rules of Professional Conduct, which took effect on October 1, 1986, provides that "[a] contingent fee agreement shall be in writing." The trial court did not find, however, that the October, 1986 agreement was not "in writing." The testimony of the plaintiff and his secretary, if credited, indicates that the defendant had orally ratified the transfer of her earlier signature to the later contract, and that she had received a copy of the new contract shortly thereafter and well before the trial of her personal injury claim. We note that in response to a complaint by the defendant, the statewide grievance committee found that the second modified contingency agreement was in compliance with Rule 1.5 (c).

If the trial court finds that the purported October 29, 1986 agreement was not made, there are only two possible conclusions to be drawn from this record: (1) the earlier, September 21, 1985 agreement had been reinstated; or (2) there was no specific agreement regarding fees, in which case the plaintiff would be entitled to recovery upon the basis of quantum meruit.[7] It is highly likely that the measure of recovery under either situation would be the same. Under this scenario, therefore, the plaintiff will be entitled to one third of the defendant's tort recovery, plus his out-of-pocket expenses. He will also be entitled to quantum meruit recovery for the other, noncontractual services that he rendered to the defendant.

The judgment of the Appellate Court is affirmed insofar as it reversed the judgment of the trial court and ordered judgment in favor of the plaintiff on liability. Insofar as the judgment of the Appellate Court limited the plaintiff's damages to one dollar, the judgment is reversed, and the case is remanded to that court with direction to remand the case to the trial court with direction to set aside the judgment for the defendant and to hold a new hearing in damages consistent with this opinion.

In this opinion the other justices concurred.

---

[7] There is no claim in this record that the plaintiff is disentitled to quantum meruit on equitable grounds. See, e.g., *Bernstein* v. *Nemeyer*, 213 Conn. 665, 675, 570 A.2d 164 (1990).