ALAN E. SILVER, P.C. *v.* HOWARD A. JACOBS ET AL.
(14614)

Lavery, Landau and Schaller, Js.

Argued February 23—officially released September 17, 1996

*Bruce S. Beck*, with whom, on the brief, was *Marc P. Mercier*, for the appellant (plaintiff).

*Steven D. Ecker*, for the appellees (defendants).

SCHALLER, J. The plaintiff[1] appeals from the judgment of the trial court granting the defendants'[2] motion

---

[1] Alan E. Silver, an attorney, is an employee and officer of the plaintiff Alan E. Silver, P.C. We will refer to Silver as the plaintiff for purposes of this opinion.

[2] The defendants are Howard A. Jacobs and the law firm of Jacobs, Grudberg, Belt & Dow, P.C., of which Jacobs is an employee and officer. We will refer to Jacobs as the defendant for purposes of this opinion.

for summary judgment. The plaintiff brought a six count complaint to recover an attorney's fee from the defendant on the basis of an alleged fee protection agreement. He claims that the trial court improperly concluded that he was not entitled to recover as to (1) the first count sounding in breach of contract, (2) the second count in quantum meruit for services performed, (3) the third count on a theory of unjust enrichment, (4) the fourth count on a theory of tortious breach of contract, (5) the fifth count on a theory of misrepresentation, and (6) the sixth count on a Connecticut Unfair Trade Practices Act (CUTPA)[3] claim. We affirm the judgment of the trial court.

The following facts are undisputed. In June, 1988, Allen Chatt and Gail Chatt retained the plaintiff to represent them concerning their claims for damages arising out of an automobile accident. The Chatts did not enter into a written fee agreement with the plaintiff. Although the plaintiff and the Chatts both claimed that an oral agreement existed, they differed as to its terms. The plaintiff worked on the Chatts' file for approximately thirteen months. In July, 1989, the Chatts discharged the plaintiff and retained the defendant and his law firm to represent them.

The defendant and the Chatts entered into a written retainer agreement on July 10, 1989. When the defendant requested the Chatts' file,[4] the plaintiff agreed to surrender it as soon as the defendant complied with Formal Opinion 31 of the Connecticut Bar Associa-

---

[3] See General Statutes §§ 42-110a through 42-110q.

[4] On July 10, 1989, the defendant sent the plaintiff the following letter: "Allen and Gail Chatt have requested that I take over the case that they have arising out of injuries to Allen Chatt on June 3, 1988. I would appreciate it if you would send over the file. Please let me know what your thoughts are with respect to the amount of work that you have done on the file and the amount you feel you are entitled to in connection with that work."

tion.[5] After the defendant responded by letter stating that "[u]pon the conclusion of the Chatt matter, *I will hold in my client's funds account the amount required under your contingency arrangement* until its disposi-

[5] On August 3, 1989, the plaintiff wrote: "As per our recent conversation concerning the above matter, I will send you the file once you have complied with Formal Opinion 31 of the Connecticut Bar Association, a copy of which I have enclosed . . . ."

Formal Opinion No. 31 (1978) provided in pertinent part: "We conclude that when a client seeks new counsel and is met with the insistence of initial counsel that an arrangement be made to protect his fee and to honor obligations he has made to physicians, the new attorney may not accept the case unless he provides to the initial counsel one of the following:

"a) An agreement signed by both the initial attorney and the new attorney establishing the method for division of the ultimate fee. As suggested by our Supreme Court this might be through the payment of compensation for the number of hours the initial attorney has spent or perhaps through the proration of the contingency fee between the two lawyers based upon the hours each spends: or

"b) A letter stating that upon the conclusion of the client's matter, he will hold in his clients' funds account the amount required under the initial lawyer's contingency fee arrangement until its disposition has been determined by agreement, voluntary fee dispute arbitration proceedings, or a court. . . . "

In *Bershtein, Bershtein & Bershtein* v. *Nemeth,* 221 Conn. 236, 240–41 n.5, 603 A.2d 389 (1992), our Supreme Court noted: "The Connecticut Bar Association Committee on Professional Ethics, Revised Formal Opinion No. 31 (1988), replaced Formal Opinion No. 31 (1978). The commission explained that it was issuing the revised opinion because of new developments in the law and the adoption of the Model Rules of Professional Conduct in 1983. One important change in the revised opinion is the omission of language from the prior opinion that required successor counsel, when representing the same client on the same matter, to reach an agreement with prior counsel concerning fee reimbursement before accepting the case. The revised opinion is cast, instead, in terms of the discharged lawyer's duties with respect to the former client's file."

Revised Formal Opinion No. 31 provides in pertinent part: "We hold that a discharged lawyer on a contingency fee violates Rule 1.16 (d) when he retains the file after demand for its surrender if (a) there is an agreement with the client or successor counsel concerning payment of fees and expenses or (b) successor counsel provides the discharged lawyer with a letter that he will hold in his clients' funds sufficient proceeds from the settlement to pay the discharged lawyer what he would have been entitled to under his contingency fee agreement . . . until the fee dispute is resolved by a court or otherwise."

Rule 1.16 (d) of the American Bar Association Model Rules of Professional

tion has been determined by agreement or by litigation,"[6] the plaintiff turned over the Chatts' file. The defendant did not request a copy of a written fee agreement at that time. At the time of the file transfer, the plaintiff had not drafted pleadings or filed a complaint, and had conducted minimal research on the case. The defendant reimbursed the plaintiff at that time for his out-of-pocket costs, $29.20.

In December, 1990, the defendant settled the Chatt case after nine days of trial, resulting in attorney's fees of $680,000. The formal settlement agreement was executed on January 8, 1991. On January 2, 1991, the plaintiff, who had learned about the settlement from a source other than the defendant, contacted the defendant to inquire about the fee. The defendant requested evidence of the contingency fee agreement between the plaintiff and the Chatts. When no evidence of a written agreement was produced, the defendant refused to pay the plaintiff any portion of the fee and refused to escrow any part of it.

The plaintiff then brought the present action seeking to recover a portion of the attorney's fee under theories

Conduct (1983) provides in pertinent part: "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled . . . . The lawyer may retain papers relating to the client to the extent permitted by other law."

[6] On August 4, 1989, the defendant replied: "I have your letter of August 3, 1989. I wrote you on July 10, 1989 in an attempt to work out the amount you feel you were entitled to in connection with your work on the file. I am enclosing a copy of that letter. I hereby comply with Connecticut Bar Association published Formal Opinion 31 as follows: Upon the conclusion of the Chatt matter, I will hold in my client's funds account the amount required under your contingency arrangement until its disposition has been determined by agreement or by litigation. I undertake to honor all obligations which you have incurred on behalf of the Chatts to pay physicians' bills and other case related disbursements, as well as to reimburse you for your out-of-pocket costs. If you send me an itemized copy of your costs, I will send you a check immediately. Please advise as to when we may call for the file."

of breach of contract, quantum meruit, unjust enrichment, tortious breach of contract, misrepresentation, and a violation of CUTPA. The defendant moved for summary judgment on all counts, and the plaintiff moved for summary judgment on the first three counts. The trial court granted summary judgment on all counts in favor of the defendant. This appeal followed.

"When reviewing a trial court's ruling on a motion for summary judgment, we must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 384 . . . . *West Haven* v. *Hartford Ins. Co.*, 221 Conn. 149, 155, 602 A.2d 988 (1992)." (Citations omitted; internal quotation marks omitted.) *CTB Realty Ventures XXII, Inc.* v. *Markoski*, 33 Conn. App. 388, 391, 636 A.2d 379, cert. granted, 228 Conn. 929, 640 A.2d 115 (1994) (appeal withdrawn July 18, 1994). Because the plaintiff conceded at oral argument that no genuine issues of material fact exist in this case, "[w]e . . . need to determine only whether, on the basis of the uncontroverted facts, the [defendant was] entitled to summary judgment as a matter of law." Id., 392; see *Burns* v. *Board of Education*, 228 Conn. 640, 643 n.2, 638 A.2d 1 (1994).

I

The plaintiff claims that the trial court improperly held that he was not entitled to recover on his breach of contract claim. The trial court concluded that "[t]he defendants' promise to hold in the client's fund an amount required by the plaintiff's contingency arrangement was subject to the condition precedent of delivery of that agreement to the defendants." The court further concluded that "[t]he plaintiff's failure to provide the Chatts with a written contingency agreement, a violation of the provisions of [General Statutes] § 52-251c

(a), cannot give rise to a right to performance from the defendants." Because we agree with the trial court that the plaintiff's violation of § 52-251c (a) precludes his recovery from the defendant, we find no merit in his claim.[7]

There is no dispute that the plaintiff had an oral, rather than written, contingency agreement with the Chatts. The plaintiff challenges the trial court's determination that this bars his recovery from the defendant. The plaintiff argues that an oral contingency agreement between an attorney and a client is not invalid. The language of § 52-251c (a)[8] clearly requires that all contingency fee agreements be reduced to writing. *Beizer* v. *Goepfert*, 28 Conn. App. 693, 705, 613 A.2d 1336, cert. denied, 224 Conn. 901, 615 A.2d 1044, cert. denied, 507 U.S. 973, 113 S. Ct. 1416, 122 L. Ed. 2d 786 (1993). The use of the word "shall" in the statute connotes that the performance of the requirement is mandatory rather than permissive. *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 240, 558 A.2d 986 (1989); *Caulkins* v. *Petrillo*, 200 Conn. 713, 717, 513 A.2d 43 (1986).

It is well established that contracts that violate public policy are unenforceable. *Konover Development Corp.* v. *Zeller*, 228 Conn. 206, 231, 635 A.2d 798 (1994), citing *Smith* v. *Crockett Co.*, 85 Conn. 282, 287, 82 A. 569 (1912); *McCarthy* v. *Santangelo*, 137 Conn. 410, 412,

---

[7] Our resolution of this issue does not require us to comment on the trial court's conclusion that delivery of the contingency agreement was a condition precedent.

[8] General Statutes § 52-251c (a) provides in pertinent part: "In any claim or civil action to recover damages resulting from personal injury . . . the attorney and the claimant may provide by contract, *which contract shall comply with all applicable provisions of the rules of professional conduct* governing attorneys adopted by the judges of the superior court, that the fee for the attorney shall be paid contingent upon, and as a percentage of: (1) Damages awarded and received by the claimant; or (2) settlement amount pursuant to a settlement agreement." (Emphasis added.)

78 A.2d 240 (1951). Section 52-251c "was intended to regulate the attorney-client relationship in order to protect plaintiffs from excessive legal fees." *Berry* v. *Loiseau*, 223 Conn. 786, 830 n.22, 614 A.2d 414 (1992). Where a law is passed for the protection of the public, we will not undermine the remedial purposes of the statute by enforcing an oral contract in contravention of the law.[9] See *Caulkins* v. *Petrillo*, supra, 200 Conn. 720 (refusing to enforce oral contract by home improvement contractor in violation of General Statutes § 20-429); *DiBiase* v. *Garnsey*, 103 Conn. 21, 28, 130 A. 81 (1925) (refusing to enforce oral contract for auto repairs in excess of $50 in violation of § 63 of chapter 400 of the Public Acts of 1921).

The plaintiff argues, as an alternative, that the requirement that a contingency agreement be in writing serves only to protect a client and that the agreement that he seeks to enforce is independent of the oral contingency agreement he had with the Chatts. In other words, the plaintiff asserts that § 52-251c (a) does not protect the defendant from liability on their separate agreement. The defendant promised the plaintiff that: "Upon the conclusion of the Chatt matter, I will hold in my client's funds account the amount required under your contingency arrangement . . . ." We agree that the plaintiff's agreement with the defendant is a separate transaction from the plaintiff's agreement with the Chatts. The unenforceability of the oral contingency agreement, however, requires the conclusion that the defendant was not obligated to hold any funds for the plaintiff.

The agreement provides that the defendant was required to hold in his clients' funds account only the

---

[9] The plaintiff's reliance on *Marcus* v. *DuPerry*, 223 Conn. 484, 611 A.2d 859 (1992), lacks merit. Our Supreme Court specifically noted in that case that the statewide grievance committee had found the contingency agreement to be in compliance with rule 1.5 (c). Id., 490 n.6. The court did not comment on that conclusion. The court also recognized that § 52-251c

amount that the Chatts were legally obligated to pay the plaintiff pursuant to the oral contingency agreement. Because the defendant was required to hold only those amounts that the Chatts were obligated to pay the plaintiff, and the Chatts were under no legal obligation to pay the plaintiff, the defendant was never contractually bound to hold or pay any amount to the plaintiff. See *West Haven* v. *Hartford Ins. Co.*, supra, 221 Conn. 164 (because insured was under no legal obligation to pay punitive damages award, insurer never contractually bound to pay that sum on behalf of insured).

## II

The plaintiff next claims that the trial court improperly determined that he did not have a right to recover from the defendant in quantum meruit and under the doctrine of unjust enrichment. He argues that it is well established that an attorney may recover the value of his legal services even absent an express agreement.[10] We disagree that the plaintiff may recover under the circumstances of this case.

"[A] quasi . . . contract is not a contract, but an obligation which the law creates out of the circumstances present, even though a party did not assume the obligation, and may not have intended but in fact actually dissented from it. . . . *It is based on equitable*

did not apply in that case because the defendant's injury predated the effective date of the statute. Id., 489 n.5.

[10] The plaintiff cites *Cole* v. *Meyers*, 128 Conn. 223, 230, 21 A.2d 396 (1941), for this proposition. In that case, the defendants had agreed to pay the plaintiff attorney a fee equal to one third of any savings of taxes obtained by a reduction of assessments plus necessary expenses. Id., 225. Not only does that case involve a factual situation to which § 52-251c would not apply, but it also clearly predated the effective date of the statute. See footnote 9. Likewise, the plaintiff's continued reliance on *Marcus* v. *DuPerry*, 223 Conn. 484, 491, 611 A.2d 859 (1992), is inapposite. See footnote 9. The Supreme Court also stated in *Marcus* v. *DuPerry*, supra, 491, that there was no claim in the record that the plaintiff was not entitled to recover on equitable grounds.

*principles* to operate whenever justice requires compensation to be made. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed to examine the circumstances and the conduct of the parties and apply this standard." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Bershtein, Bershtein & Bershtein* v. *Nemeth*, 221 Conn. 236, 242, 603 A.2d 389 (1992).

The trial court determined that the plaintiff's equitable claims "have as its foundation the plaintiff's own violation of the code of ethics. Under such circumstances, enforcement of the plaintiff's claims would appear to undermine judicial integrity. . . . The agreement between the parties, evidenced by their written exchange, failed because of the plaintiff's failure to provide the necessary contingency agreement. That failure belies the claims of unjust enrichment and quantum meruit." We conclude that the trial court properly granted summary judgment on counts two and three of the plaintiff's complaint.

As we said earlier, § 52-251c protects injured persons from excessive legal fees. *Berry* v. *Loiseau*, supra, 223 Conn. 830 n.22. The plaintiff, nevertheless, continues to argue that the public does not require protection when the file has been transferred to another attorney and the plaintiff seeks only to recover from the successor attorney. We disagree. It would be unjust to permit an attorney to avoid this public policy by splitting a fee with a successor attorney. Moreover, by enacting § 52-251c without qualification, the legislature has imposed its view that it is more urgent to protect clients from attorneys than to protect attorneys from successor attorneys. See *Barrett Builders* v. *Miller*, 215 Conn. 316, 326–27, 576 A.2d 455 (1990) (holding that § 20-429

protects consumers from unscrupulous contractors). Because the plaintiff in this case has violated § 52-251c, thereby leaving his clients exposed to the possibility of excessive legal fees, the plaintiff may not recover from the successor counsel under equitable principles. See *Bershtein, Bershtein & Bershtein* v. *Nemeth*, supra, 221 Conn. 243 (plaintiff attorney did not deliver requested accounting or case file to successor attorney); *McCarthy* v. *Santangelo*, 137 Conn. 410, 412, 414, 78 A.2d 240 (1951) (plaintiff attorney denied recovery on quantum meruit where he had agreed to accept one third of award of alimony as compensation).

III

The plaintiff claims finally that the trial court improperly granted the defendant's motion for summary judgment on counts four, five and six of his complaint. In those counts, the plaintiff alleged tortious breach of contract, misrepresentation and a violation of CUTPA, respectively. We conclude that the trial court properly granted summary judgment because each of these claims relies on the plaintiff's oral contingency agreement with the Chatts, which we have concluded is unenforceable.

First, our earlier conclusion that the defendant did not breach his agreement with the plaintiff, but rather that the defendant had no legal obligation because of the unenforceability of the oral contingency agreement, disposes of count four. Second, a claim of misrepresentation requires proof that the plaintiff relied on a false representation that the defendant made as a statement of fact and thereby suffered injury. *Rizzo Pool Co.* v. *Del Grosso*, 232 Conn. 666, 683, 657 A.2d 1087 (1995); *Meyers* v. *Cornwell Quality Tools, Inc.*, 41 Conn. App. 19, 27 n.15, 674 A.2d 444 (1996). " '[A] plaintiff who has not suffered damage or injury cannot pursue an action at law or in equity for . . . damages resulting from

fraudulent actions.' " *Rizzo Pool Co.* v. *Del Grosso*, supra, 683, quoting *Kilduff* v. *Adams, Inc.*, 219 Conn. 314, 329, 593 A.2d 478 (1991). Finally, a claim for recovery of damages under CUTPA requires proof of an ascertainable loss. *Conaway* v. *Prestia*, 191 Conn. 484, 493, 464 A.2d 847 (1983).[11] Once again, the plaintiff's own failure to obtain a written contingency agreement with his clients produces the result in this case.

The judgment is affirmed.

In this opinion LANDAU, J., concurred.

LAVERY, J., dissenting. I respectfully dissent from part II of the majority opinion. It is undisputed that a trial court may grant a summary judgment where, under applicable principles of substantive law, the moving party is entitled to judgment as a matter of law. *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 105, 639 A.2d 507 (1994). The majority, however, cites no substantive applicable law, statutory or common, that compels the conclusion that a violation of § 52-251c is an outright bar to an attorney's action in quantum meruit against a successor attorney. The majority states that, under equitable quasi-contract principles, it would be "unjust to permit an attorney to avoid th[e] public policy by splitting a fee with a successor attorney." Such a construction suggests that the majority has adopted a per se rule, foreclosing recovery from a successor attorney under any set of circumstances, as long as the attorney failed to have the client sign a written contract. I believe that the equitable contract principles on which we should focus are those that have traditionally been the basis for an award under the restitutionary theories of quantum meruit and unjust enrichment: only those circumstances that existed between the two pertinent

---

[11] This " 'requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either damages or equitable relief.' " *Conaway* v. *Prestia*, supra, 191 Conn. 493, quoting *Hinchliffe* v. *American Motors Corp.*, 184 Conn. 607, 615, 440 A.2d 810 (1981).

parties,[1] here the plaintiff and the defendant. If the trial court limited its review of this matter to the transaction between the parties, then it would have had to determine whether the defendant benefited from the plaintiff's work product. Such a determination is a question of fact and thus inappropriate for summary judgment. It may be that the trial court, after applying traditional quasi-contract principles, would have concluded that the plaintiff should receive only a minimal amount for his work product, but because the value of an attorney's services are recoverable under quantum meruit,[2] he should at least be afforded the opportunity to present whatever evidence he has, if any, regarding the value of the services he had conferred upon the defendant.

The majority also states that it is more urgent to protect the public from attorneys than to protect attorneys from successor attorneys. For this proposition, it cites *Barrett Builders* v. *Miller*, 215 Conn. 316, 326–27, 576 A.2d 455 (1990). *Barrett Builders* considered whether a contractor can recover in quantum meruit from a homeowner where the contractor failed to comply with the written contract requirement in General Statutes § 20-429 of the Home Improvement Act. Id., 320. In concluding that the contractor could not recover, the Supreme Court stated that it is more important to protect consumers from unscrupulous contractors than to protect contractors from manipulative consumers. *Barrett Builders*, therefore, presented a situation where the interests of the plaintiff contractor and the con-

---

[1] "The theory of restitution as a basis for recovery encompasses both unjust enrichment and quantum meruit as the terms have been used in Connecticut cases. Broadly speaking, the availability of restitution is dependent upon unjust enrichment, that is, upon a perceived injustice because *one party has benefited at the expense of another*. . . . 'The question is: Did he [the party liable], to the detriment of someone else, obtain something of value to which he was not entitled?' " (Citations omitted; emphasis added.) *Burns* v. *Koellmer*, 11 Conn. App. 375, 384, 527 A.2d 1210 (1987).

[2] *Marcus* v. *DuPerry*, 223 Conn. 484, 491, 611 A.2d 859 (1992).

sumer were in direct conflict. That is clearly not the case here. The ability of an attorney to recover from a successor attorney in no way endangers the important public policy of protecting the public from excessive legal fees. The majority fails to explain precisely how its denial of the plaintiff's cause of action is inextricably linked to a furtherance of the public policy, particularly in light of its statement that "the plaintiff's agreement with the defendant is a separate transaction from the plaintiff's agreement with the Chatts." Because the transaction between the plaintiff and the defendant was separate from the transaction between the plaintiff and the Chatts, it should be treated as such.

I would reverse the judgment and remand the matter to the trial court for further proceedings.