[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFF'S ATTORNEY'S FEE ANDINTEREST IMPOSED PURSUANT TO GENERAL STATUTES § 52-192a
In the court's memorandum dated August 12, 1997, the amount CT Page 13341 of the plaintiff's attorney's fee recoverable on the third count of his complaint was not determined because the hearing on the questions of the amount requested and the reasonableness thereof had not yet occurred. And the amount of interest to be added to the plaintiff's recovery pursuant to § 52-192a could not be ascertained until the attorney's fee was decided. A hearing was held on August 27, 1997 and thereafter briefs were submitted. From the evidence presented at the hearing and the claims made in the briefs, the facts set forth below were established.
 I.
The plaintiff is an attorney with a limited general practice principally in commercial, marital and estate areas of the law. He hired the law firm of Attorney William H. Clendenen, Jr. to represent him when the defendant decided not to recognize his decedent's change of beneficiary on an insurance policy from her nephew to her estate.
The initial employment agreement was embodied in a letter dated May 13, 1991 written by Attorney Clendenen and sent to the plaintiff. The letter listed hourly lawyers' fees at $200.00 for Clendenen, $125.00 for other attorneys in the firm and $40.00 for legal assistants. Additionally the plaintiff was to be responsible for all expenses.
In the court's earlier memorandum, the protracted nature of this litigation is discussed. After Judge DeMayo's adverse decision, the plaintiff and Attorney Clendenen entered into an oral modification of their fee arrangement. Clendenen's firm would forego its fees if the litigation ultimately were unsuccessful. But if a favorable result were achieved, the plaintiff would pay at hourly rates of $200.00 for Clendenen and $125.00 for the attorneys associated with him. Subsequently, by a second oral modification the hourly rates were increased to $225.00 for Clendenen and $150.00 for the other attorneys. The plaintiff continued to be responsible for costs and expenses.
As noted in the court's earlier memorandum, the litigation involved a trial before Judge DeMayo, an appeal to the Appellate Court, a trial before Judge Booth, a second appeal, this time taken by the Supreme Court where the plaintiff prevailed on his breach of contract claim and the case was remanded for a determination of the plaintiff's CUIPA-CUTPA[1] claim as well as the plaintiff's requests for an attorney's fee and interest. CT Page 13342
In the time period from May 13, 1991, the date of the retainer letter, to August 26, 1997, the day before the hearing on the attorney's fee, the invoices of Attorney Clendenen's law firm in this matter totaled $94,599.65 for fees and $6,629.29 for expenses. The exhibits submitted showed the work done by Clendenen, the other lawyers and the legal assistants.
Attorney Clendenen has been a member of the Connecticut Bar since 1967. Both reputation-wise and to the court's own knowledge, he is a skilled litigator in several aspects of civil law. His associates who participated in this case are attorneys James E. Clifford, Nancy Walker and Thomas Pellegrino. Attorney Walker, who, from the billing records, appears to have been the most active associate, is known to the court as an extremely accomplished researcher. The court has no actual knowledge of Attorneys Clifford and Pellegrino. Their resumes, however, are impressive and the work product of the Clendenen office was superior. With respect to the hourly rates agreed to by the plaintiff, the sum of $200.00 later raised to $225.00 for Clendenen and $125.00 late; raised to $150.00 for the other attorneys is reasonable and in accord with fee requests from other lawyers in this vicinity in the period from 1991 to 1997.
In the billing records, however, 25.75 hours at $60.00 per hour is attributed to work performed by "C.R." and 3.00 hours at $90 per hour is attributed to work done by "R.D.C." No further description of these persons was supplied by testimony or appears in the exhibits. Not until September 12, 1997, when the plaintiff's reply brief was filed, did the court learn that "C.R." was a law student and "R.D.C." was a law school graduate waiting to take the bar examination. As such, they can only be classified as legal assistants for whom the plaintiff agreed to pay $40.00 per hour. Parenthetically, two other persons appear under the designation of "legal assistants" on the Clendenen firm's stationery one of whom participated minimally in the case.
 II.
With the exception of the amounts claimed for "C.R." and "R.D.C.", the defendant apparently does not object to hourly rates qua rates that the plaintiff agreed to pay William Clendenen and the other lawyers.
The defendant does, however, object to the total amount CT Page 13343 requested. The objection is premised on three reasons, namely: that each of the three counts of the complaint alleged a separate and distinct cause of action requiring different proofs; that on the second count the defendant was the prevailing party and that the oral modifications of the fee agreement should be held unenforceable on public policy grounds as contrary to Rule 1.5 of the Rules of Professional Conduct and/or § 52-251c of the General Statutes.
The defendant's first and second reasons can be considered together. The three-count complaint alleged respectively that the defendant had breached its contract with Ella B. Ryder the plaintiff's decedent; that as the stakeholder of the proceeds of the insurance policy the defendant had a duty to bring an interpleader action wherein the conflicting claims could be resolved; and that in its dealings with the plaintiff, the defendant had violated CUIPA and CUTPA. With respect to the interpleader claim, it is evident, as the Supreme Court held[2]
that § 52-484 allows any interested party as well as a stakeholder to institute interpleader proceedings. But in electing to be an active litigant rather than a stakeholder, the defendant assumed risks that it otherwise would not have had. Based on the allegations of the complaint, these risks were that if the plaintiff were successful on its breach of contract claim, the defendant's conduct in its dealings with the plaintiff could be found to be violative of CUIPA and CUTPA.
In its prior memorandum, the court, in discussing the CUIPA-CUTPA claim cited Heyman Associates No. 1 v. InsuranceCompany of Pennsylvania, 231 Conn. 756, 790 (1995) wherein the Supreme Court noted that for these issues the focus is on the conduct of the insurer whose duty does not come from the policy involved but rather is imposed by statute. But contrary to the defendant's argument, the language from Heyman Associates does not mean that the factual and legal issues of the breach of contract claim and the CUIPA-CUTPA claim were separate and distinct. Rather it is evident from the court's prior memorandum that its holdings were that in the course of its refusal to pay the plaintiff, the defendant violated the CUIPA and CUTPA statutes. Moreover, as pointed out in Russell v. Dean WitterReynolds, Inc., 200 Conn. 172, 194-95 (1986), Connecticut has no rule requiring a pro rata reduction in an award of an attorney's fee to a successful litigant who failed to prevail on all of his claims. CT Page 13344
Rule 1.5(c) of the Code of Professional Conduct requires that a contingent fee arrangement be in writing. Assuming for the sake of argument that the oral agreement whereby the plaintiff was to pay no fee unless the litigation were successful and, in that event to pay set hourly rates is a contingent fee setup, the defendant is not benefitted [benefited]. In fact, the defendant realizes that whatever was the fee arrangement between the plaintiff and Clendenen, it cannot claim to be the beneficiary thereof, seeMozzochi v. Beck, 204 Conn. 490, 499 (1987). Further, there has been unanimity among courts that the Code of Professional Responsibility does not, per se, provide causes of action for damages to third parties. Id., 204 Conn. 500. The same analogy should apply in the present situation where the defendant seeks to prevent or minimize an award for an attorney's fee.
General Statutes § 52-251(c)(a) provides that in any claim or civil action to recover damages resulting from personal injury, wrongful death or damage to property, the attorney and the claimant may enter into a contingent fee contract which shall comply with all applicable provisions of the rules of professional conduct adopted by the judges of the Superior Court. The reference to the Code of Professional Conduct means that Rule 1.5 as applicable and the contingent fee agreement must be in writing. Silver v. Jacobs, 43 Conn. App. 184, 189, cert. denied239 Conn. 938 (1996).
In Silver v. Jacobs, supra, 43 Conn. App. 189, 191 and inPerkins and Mario P.C. v. Annunziata, 45 Conn. App. 239 (1997), both suits between a party's original attorney and successor attorney, the Appellate Court decided that oral contingent fee arrangements violated public policy, as expressed in §52-251c, and therefore were unenforceable. The defendant appreciates that § 52-251c applies only to the tort actions enumerated therein. By analogy, however, the defendant contends that the oral agreement as to fees in this case is also violative of public policy and should not be enforced[3]. Based in part on analysis expressed in Silver v. Jacobs, supra, the court disagrees.
Quoting from Berry v. Loiseau, 223 Conn. 786, 830 n. 22 (1992), the Appellate Court in Silver v. Jacobs, supra,43 Conn. App. 189-90 stated that § 52-251c was enacted to regulate the attorney-client relationship in order to protect plaintiffs from excessive legal fees. Although all the litigants in Silver andPerkins Mario P.C. v. Annunziata were lawyers, the money CT Page 13345 involved was the client's. In each case the question was whether the original attorney, whose contingent fee arrangement was oral, should receive any portion of the recovery. The issue here is whether the opponent of a party entitled by statute to an attorney's fee can avoid or minimize the obligation because the party's contingent fee arrangement was not reduced to writing. The court's view that the obligation remains unaffected is supported by the following language also from Berry v. Loiseau. "Section 52-251c, by its terms, regulates the relationship between an attorney and a client with respect to the collection of a contingency fee in certain types of civil actions. The statute does not purport to govern a trial court's discretion in assessing the amount of punitive damages to be awarded to a party who has a contingency fee agreement with his attorney."223 Conn. 830-31.
Earlier in this memorandum the court found that the hourly charges by Attorney Clendenen and the other lawyers in his firm were reasonable. Now the court also finds that their reported hours of work were also reasonable considering the proceedings involved in the more than six year time span of this litigation. But from the amount requested for an attorney's fee, the court subtracts $1545.00 for work alleged to have been performed by "C.R." and $270.00 for work attributed to R.D.C."[4]
Accordingly the plaintiff is awarded the sum of $95,134.00 as an attorney's fee; $92,784.65 being for attorney's time and $2,349.35 being for Westlaw charges. Payment of the remainder of the reported expenses will depend upon their taxability as costs.
 III
The 12% interest resulting from the defendant's rejection of the plaintiff's offer of judgment, as noted in the court's earlier memorandum relates back to August 29, 1992, the date the complaint was filed. Gen. Stat. § 52-192a(b). Augmented by the award of an attorney's fee the judgment is $320,860.60. On this judgment, $350.00 plus interest at the rate of 12% per annum was computed from August 29, 1992 until May 27, 1997 when the defendant paid $100,000.00, the face value of the policy. The amount is $183,133.23. From May 28, 1997 until November 1, 1997, interest at the rate of 12% per annum is owed and payable on the sum of $220,860.00 amounting to $11,190.24.
The defendant owes the plaintiff the sum of $220,860.00 plus penalty interest pursuant to § 52-192a(b) of $194,323.47. CT Page 13346 Penalty interest as well as post-judgment interest will run until the entire judgment is paid.
By way of recapitulation from the earlier memorandum and this one, the defendant's liabilities are as follows:
 Compensatory damages $100,000.00 $100,000.00 (paid May 27, 1997).
 Pre-judgment interest $65,233.40 (@ 10% § 37-3a from August 30, 1990 to May 9, 1997)
 Post-judgment interest $493.20 (@ 10% § 37-3a from May 10 1997 to May 27, 1997)
 Punitive damages $60,000.00 (§ 42-110g(a))
 Attorney's fee $95,134.00 (§ 42-110g(d))
 Offer of Judgment $194,323.47 (§ 52-192a; $350.00 attorney's fee plus 12% per annum on the total recovery from August 29, 1992, the date when prejudgment interest, punitive damages and attorney's fees are paid
Jerrold H. Barnett, Judge