[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter comes before the court on defendants' motion for summary judgment.
The plaintiff is a Connecticut attorney who has filed a twelve-count complaint against a Connecticut legal professional corporation.
The plaintiff, David F. Falvey, entered into a contract with the defendant, O'Brien, Shafner, Stuart, Kelly Morris, P.C., ("OSSKM"), wherein the plaintiff was to refer personal injury clients to OSSKM in return for 50 percent of all legal fees received for each case. The plaintiff alleges breach of said contract and seeks payment of fees for twelve personal injury client referrals. The defendant moves for summary judgment on seven of the twelve referrals on the grounds that the plaintiff did not execute a written fee agreement with the referred individuals.
 DISCUSSION
The defendant argues that an attorney cannot recover fees from a successor attorney in the absence of a written contingency fee agreement between the original attorney and the client. In opposition, the plaintiff argues that his right to payment does not derive from a direct contract with the referred clients. Rather, his right to payment derives from an independent and separate joint fee splitting contract with the defendant.
Genuine issues of fact exist as to whether the plaintiff was under an obligation to execute a written fee agreement.[1] The pleadings fail to indicate whether the plaintiff was retained by the referred clients or whether the plaintiff merely provided these individuals with a referral.
If the plaintiff was retained as legal counsel by the referred clients, the plaintiff was under an obligation to execute a written contingency fee agreement. See Silver v.CT Page 13034Jacobs, 43 Conn. App. 184, 682 A.2d 551 (1996) (holding that an oral contingency fee agreement is against public policy and, therefore, is unenforceable), see also Perkins and Mario v.Annunziata, 45 Conn. App. 237, 694 A.2d 1388 (1997).
In the present case, the plaintiff did not execute a written fee agreement with his clients but entered into an oral 50 percent referral fee agreement with the defendant instead. If the 50 percent referral fee included monies paid to the plaintiff for work performed under the prior oral contingency fee contracts, the plaintiff would be circumventing the requirements of General Statutes § 52-251c by referring cases to a successor attorney and subsequently claiming the clients' fee through a joint fee splitting agreement.
The court, in Silver v. Jacobs, noted its disapproval of such a practice: "[Section] 52-251c protects injured persons from excessive legal fees . . . It would be unjust to permit an attorney to avoid this public policy by splitting a fee with a successor attorney. Moreover, by enacting § 52-251c without qualification, the legislature has imposed its view that it is more urgent to protect clients from attorneys than to protect attorneys from attorneys." Silver v. Jacobs, supra,43 Conn. App. 192.
Under this scenario, the referral agreement would be against public policy because it seeks to circumvent the mandatory requirements of General Statutes § 52-251c. Therefore, the referral agreement would be unenforceable.
Alternatively, if the plaintiff merely referred individuals to the defendant the plaintiff was not required to execute a fee agreement. However, under the Rules of Professional Conduct he was required to inform the clients of his financial interest in providing the referral, namely his 50 percent referral fee.
In this case the issue becomes whether it was unethical for the plaintiff to enter into a 50 percent division of fee agreement with the defendant when his only contribution to the representation was to provide a referral.
There is nothing inherently unethical about an agreement which divides legal fees between or among lawyers in different firms. The ABA Model Rules of Professional Conduct allow for such a division of fees. However, there are limitations to the manner CT Page 13035 in which the fees may be divided. The Rules of Professional Conduct allow a division of fees based either on the proportion of each lawyer's services, or disproportionately if the lawyers jointly assume responsibility for the representation and the client assents to the division in writing.[2]
Connecticut rules adhere substantially to the ABA Model Rules on fee divisions. Connecticut, however, loosens the restrictions on fee divisions between lawyers by allowing a division so long as the client is advised and does not object and the total fee is reasonable. In Connecticut, Model Rule 1.5(e) reads as follows: "A division of fee between lawyers who are not in the same firm may be made only if: (1) The client is advised of the compensation sharing agreement and of the participation of all the lawyers involved, and does not object; and (2) The total fee is reasonable." Rules of Professional Conduct 1.5(e).
"Although proportionality is no longer an absolute requirement under Model Rule 1.5(e), the rule nevertheless does not countenance straightforward referral fees. The originating attorney must still assume joint responsibility for the representation if the division of fees is not to be based upon the allocation of services rendered. Thus, simply forwarding a case to another lawyer is not enough to make a fee-splitting agreement ethical under . . . the Model Rules. See generally
Annotation, Validity and Enforceability of Referral FeeAgreement Between Attorneys, 28 ALR 4th 665 (1984)."ABA/BNA Manual on Professional Conduct 41:708-709.
Connecticut, however, is among the few states which have modified the ABA's model provisions to allow referral fees by eliminating the reference to proportionality or responsibility (although the comment retains the Model Rule's reference to proportionality or shared responsibility). Id. Thus, it would not be inherently unethical for the plaintiff to receive payment under the referral fee arrangement.
Under this scenario, issues of fact would exist as to whether the referred clients were informed of the fee splitting agreement and whether the total fee to the clients was reasonable. Since genuine issues of fact exist, the motion for summary judgment is denied.
Mihalakos, J. CT Page 13036