[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Statewide Grievance Committee has made a presentment to this court that Samuel E. Dixon, Jr. has been guilty of misconduct not occurring in the presence of the court and seeks "such discipline as the court deems appropriate." The presentment alleges that Dixon violated Rules 1.15, 1.5(c) and 1.5(e) of the Rules of Professional Conduct.
A hearing was conducted on September 23, 1999 and Dixon represented his own interests. The hearing was continued to October 28, 1999 to allow Dixon to present evidence in his defense. The court finds the following facts:
Sometime in 1995 or prior, Dixon represented Mary E. Parsons with respect to an automobile accident involving one Wayne Legere (the accident case). Parsons was originally represented in the accident case by Attorney James McCann, who was a college friend of hers. Prior to representing Parsons in the accident case, Dixon represented Parsons in several matters which were referred to at the hearing as the workers compensation matter, the Federal MG case and a probate appeal. In connection with these matters, Parsons signed a written retainer agreement prepared by Dixon. (Respondent's exhibit 1)
According to Parsons, Dixon convinced her to retain him, CT Page 15814 rather than McCann, to represent her in the accident case. Both Parsons and Dixon testified that there was no written fee agreement with Dixon regarding the accident case. Parsons was not aware of any fee sharing arrangement between Dixon and McCann. Parsons did understand that Dixon was to receive a fee of one-third of the gross settlement in the accident case.
In August 1995, Dixon effectuated a settlement of the accident case for a gross amount of $20,000. A letter was sent to Parsons detailing the breakdown of the settlement. (Petitioner's exhibit A). That letter shows a disbursement to Parsons of $9, OOO, to McCann for file costs only in the amount of $474.20 and to Dixon for attorney's fees in the amount of $6,666.66. The letter indicated that the remainder of the gross settlement "is in escrow to defend against bill for hourly billing submitted by Attorney James F. McCann."
Eventually, Dixon disbursed $3,000 plus costs to McCann. (Petitioner's exhibit B). Parsons did not consent to this disbursement nor was she aware that Dixon was planning to pay that amount to McCann. Rather, Dixon told her she would get the balance of the gross settlement when his funds were more liquid. According to Parsons, she first learned that Dixon had disbursed the $3,000 to McCann in March 1998.
"In presentment proceedings, the statewide grievance committee must prove by clear and convincing evidence that the attorney misconduct it alleges has occurred. (Citations omitted.)" Statewide Grievance Committee v. Whitney,227 Conn. 829, 838, 633 A.2d 296 (1993). In this case, the Grievance Committee alleges that Dixon violated Rules 1.15, 1.5(c) and 1.5 (e) of the Rules of Professional Conduct.
The petitioner has alleged that Dixon violated Rule 1.15[1]
"by disbursing escrow funds to Attorney McCann." (¶ 16). The petitioner has failed to prove this allegation by clear and convincing evidence.
The petitioner has also alleged that Dixon violated Rule 1.5(c) by failing to provide Parsons with a written contingency fee agreement regarding the accident case. (¶ 17) Rule 1.5(c) provides, in pertinent part, that "A fee may be contingent on the outcome of the matter for which the service is rendered. . . . A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the CT Page 15815 percentage or percentages of the recovery that shall accrue to the lawyer as a fee in the event of settlement, trial or appeal, whether and to what extent the client will be responsible for any court costs and expenses of litigation, and whether such expenses are to be deducted before or after the contingent fee is calculated." The ethical requirement that a contingency fee agreement in a personal injury case be reduced to writing has also been adopted as a statutory mandate in General Statutes § 52-251(a). See Silver v. Jacobs, 43 Conn. App. 184, 189,682 A.2d 551 (1996).
The petitioner has established by clear and convincing evidence that there was no written fee agreement with respect to the accident case. Both Dixon and Parsons testified that there was no such agreement. Dixon's position, that the written retainer agreement for the workers compensation matter, the Federal AIG case and the probate appeal (Respondent's exhibit 1) suffices for the accident case as well, is untenable. Dixon was ethically required to have a written fee agreement with Parsons,id., and he did not. Accordingly, a violation of Rule 1.5(c) has, been established.
Finally, the petitioner has alleged that Dixon violated the provisions of Rule 1.5(e) because the division of attorney's fees between him and McCann "was made without Ms. Parsons [sic] knowledge or consent and was not reasonable." (¶ 18) Rule 1.5(e) provides that: "A division of fee between lawyers who are not in the same firm may be made only if: (1) The client is advised of the compensation sharing agreement and of the participation of all the lawyers involved, and does not object; and (2) The total fee is reasonable." There is no question in this case that Dixon and McCann were not in the same firm.
The petitioner has established by clear and convincing evidence that Parsons did not know that Dixon planned to disburse $3,000 of her gross settlement proceeds to McCann, did not consent to the disbursement and did not know until March 1998 that Dixon had in fact disbursed $3,000 to McCann. The only notice regarding McCann's bill that Dixon gave to Parsons is the statement in the August 24, 1995 settlement letter, petitioner's exhibit A, that he was holding the remainder of her gross settlement in escrow to defend against McCann's bill.[2] Dixon himself testified that Parsons disputed the payment of legal fees to McCann and that is the reason he did not immediately disburse a fee to McCann. These facts clearly and convincingly establish a violation of CT Page 15816 Rule 1.5 (e).
Having found two ethical violations proven by clear and convincing evidence, the court must next consider the appropriate sanction pursuant to Practice Book § 2-47(a). "An attorney as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." (Citation omitted; internal quotation marks omitted.) Massameno v. Statewide GrievanceCommittee, 234 Conn. 539, 554-55, 663 A.2d 317 (1995).
Connecticut courts use the American Bar Association's Standards for Imposing Lawyer Sanctions as a guide to appropriate disciplinary sanctions. See, e.g., StatewideGrievance Committee v. Spirer, 46 Conn. App. 450, 463-65,699 A.2d 1047 (1997), rev'd on other grounds, 247 Conn. 762, ___ A.2d ___ (1999). The ABA standards list a number of aggravating and mitigating factors. The relevant aggravating factors in this case are prior disciplinary offenses, a pattern of misconduct, multiple offenses, refusal to acknowledge wrongful nature of conduct, vulnerability of victim and substantial experience in the practice of law. ABA Standards, § 9.22(a), (c), (d), (g), (h) and (i). The relevant mitigating factor in this case is the absence of a dishonest or selfish motive. Id., § 9.32(b).
As to the relevant aggravating factors, Dixon has a significant history of disciplinary actions taken against him arising both out of mismanagement of his law office and mishandling of his clients' money. Four separate instances have been brought to the court's attention. See Petitioner's exhibits C — G. The pattern of financial misconduct extends back to the late 1980's. See exhibit C. Nonetheless, in this proceeding, CT Page 15817 Dixon was not only unwilling to acknowledge that he did anything wrong but sought to blame Parsons for his ethical failings.[3]
Dixon's unwillingness to accept responsibility and his victimization of his clients also appears to be long-standing. See exhibit C. Parsons clearly was vulnerable to Dixon's manipulations and still feels vulnerable today, as her testimony and demeanor in court revealed. Finally, at the time Dixon's ethical violations occurred he had been in practice for approximately ten years.
As to the relevant mitigating factor, it does not appear that Dixon had a dishonest or selfish motive in his handling of the accident case. Rather, it appears that his entrenched patterns of financial misconduct, inattention to ethical considerations and mismanagement of his law office were the primary reasons for the ethical violations found proven. It is, however, this entrenched pattern which is deeply disturbing to the court and justifies a period of suspension for the proven ethical violations.
Accordingly, the respondent Samuel E. Dixon, Jr. is suspended from the practice of law for a period of nine months. This suspension shall commence upon the conclusion of the suspension ordered in Statewide Grievance Committee v. Dixon, Judicial District of New Haven, Docket No. CV-98-0410338, (October 15, 1999, Moran, J.). It is further ordered that the respondent shall apply for readmission pursuant to the provisions of Practice Book § 2-53 and, as a condition of consideration for readmission, shall demonstrate participation in 9 continuing legal education credit hours in courses covering legal ethics, law office management and accounting.[4]
Linda K. Lager, Judge