## IN RE ESTATE OF PASQUALE SALERNO

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE No. 31063S
NEW HAVEN

Memorandum filed May 4, 1993

*Zeldes, Needle & Cooper,* for the plaintiff, Rita Salerno, conservatrix (estate of Pasquale Salerno).

*David V. Esposito,* for Pasquale Salerno, as the guardian ad litem.

*Michael R. Bullers* and *Daniel R. Schaefer,* assistant attorneys general, and *Richard Blumenthal,* attorney general, for the defendant, state of Connecticut.

VERTEFEUILLE, J. This appeal from the Probate Court for the district of North Branford presents certain issues of first impression concerning General Statutes § 52-251c, the attorney's fee cap statute, enacted in 1986 as part of the tort reform legislation adopted by the legislature. In an effort to ensure that the plaintiff in a personal injury action would actually receive a larger portion of any judgment or settlement amount, the legislature established certain limitations on the amount of the judgment or settlement that could be paid for the plaintiff's attorney's fees. Instead of the

customary one third contingency fee, § 52-251c (b) establishes the following sliding scale fee limitation: "In any such contingency fee arrangement such fee shall be the exclusive method for payment of the attorney by the claimant and shall not exceed an amount equal to a percentage of the damages awarded and received by the claimant or of the settlement amount received by the claimant as follows: (1) Thirty-three and one-third per cent of the first three hundred thousand dollars; (2) twenty-five per cent of the next three hundred thousand dollars; (3) twenty per cent of the next three hundred thousand dollars; (4) fifteen per cent of the next three hundred thousand dollars; and (5) ten per cent of any amount which exceeds one million two hundred thousand dollars."

The plaintiff contends that the fee cap statute is unconstitutional in each of the following respects: (1) it denies the plaintiff equal protection of the laws under the constitution of Connecticut, article first, § 20; (2) it violates the constitution of Connecticut, article first, § 1, by creating an exclusive public emolument or privilege for the insurance industry and the defense bar; (3) it denies tort victims due process of law; and (4) it improperly interferes with judicial rule-making authority and violates the separation of powers. The plaintiff contends further that the fee cap statute should be interpreted to permit tort victims to waive their rights under the statute and to allow them to enter into reasonable fee agreements.

The principal witness at trial was Rita Salerno, wife of Pasquale Salerno. On January 4, 1991, Rita Salerno was appointed conservatrix of the estate and person of her husband. Pasquale, who is thirty-seven years old, is totally and permanently disabled. He contracted toxic hepatitis and now suffers from severe organic brain syndrome (dementia) secondary to trichloroethylene exposure. Pasquale is unable to care for himself and

requires round-the-clock personal care, which is provided by his wife. They live in Northford with their three children.

Salerno contends that her husband's disability was caused by his exposure to certain toxic chemicals at his place of employment. From 1979 to 1989, Pasquale Salerno worked as a vapor degreaser and was exposed to trichloroethylene and other chemicals. His medical reports confirm that his condition is related to toxic chemical exposure.

In November, 1990, Salerno consulted with Attorney Richard Bieder of Koskoff, Koskoff and Bieder about bringing suit against the manufacturers of the chemicals to which her husband was exposed. Bieder and his firm are experienced in representing plaintiffs in toxic tort litigation. He told Salerno that he would be willing to represent her, but that he would need to investigate the claim first and that the cost of the investigation would be substantial. Salerno explained that she could neither pay for the costs of the investigation nor for the costs of the legal representation on an hourly basis. The Salerno family is supported only by monthly Social Security payments of $978. Salerno is unable to be employed outside her home because she must provide the necessary personal care for her husband.

Bieder and Salerno then discussed a contingency fee. Bieder explained that the fee cap statute, § 52-251c, sets a limit on the amount of the plaintiff's contingency fees in a case such as the one Salerno proposed to bring. He explained, however, that he could not represent her for the maximum fee under the statute because it was not economically feasible for a toxic tort claim. Bieder explained that his firm would have to advance the cost of investigation, which was likely to be $20,000 to $25,000. He explained further that the litigation would

be vigorously opposed, that a trial would be likely, and that his time to represent her to the conclusion of the matter would be worth between $200,000 and $400,000. Under the fee cap statute, payment of such a fee would probably be prohibited.

After further discussion, Bieder and Salerno agreed on a contingency fee of 30 percent, subject to the requirement that the Probate Court approve the written contingency fee agreement in that amount. Bieder further advised Salerno that before they finalized their agreement, she should speak with other lawyers who might be willing to take the case to see if any one of them would be willing to take her case for the contingency fee as limited by the fee cap statute. He recommended eight attorneys who were experienced in tort litigation representing the families of the seriously injured.

Using a speaker telephone in Bieder's conference room, Salerno and Bieder conferred, one at a time, with Attorney William F. Gallagher of New Haven, Attorney Matthew Schafner of Groton, Attorney Stephen I. Traub of New Haven, Attorney William R. Davis of Hartford, Attorney R. Bartley Halloran of Hartford, Attorney Garret M. Moore of Waterbury, Attorney Richard A. Silver of Stamford and Attorney Robert B. Adelman of Bridgeport. All of these attorneys are experienced in complex tort litigation. Each of them indicated an interest in taking the case on its merits or at least in proceeding to investigate the claim, but each declined the representation because of the fee cap statute, which renders complex tort litigation economically unfeasible.

Almost all of these attorneys testified at trial, explaining in greater detail the reasons why the fee cap statute makes it impractical to undertake a toxic tort claim such as Salerno's. Litigation of this type is very

demanding and time consuming. Such cases are not usually settled before trial and a lengthy trial is necessary to prosecute the claim. The value of the time spent by a firm to take the case through trial can be anywhere from $200,000 to $400,000 or more, calculated on an hourly basis. The fee cap statute, however, limits attorney's fees to unreasonably small amounts for such complex cases. If a verdict or settlement amount is $1,200,000 the maximum attorney's fee under the statute is $280,000. Yet the value of the attorney's time spent on the matter, when calculated on an hourly basis, could reasonably exceed $280,000.

Complex tort cases also require that the attorneys advance funds for investigation and for hiring experts. It is rare that a client can pay such expenses in advance and it is common, therefore, for the attorneys to advance the necessary funds. In toxic tort cases or product liability claims, out-of-pocket costs can be $200,000 or more. Under the fee cap statute, there is an insufficient return in light of the funds advanced by the attorney.

The attorneys testified that for both these reasons, the fee cap statute has made it economically impractical to continue to represent plaintiffs in complex tort cases. Several of the attorneys testified that they had recently handled complex tort cases where the fee was limited by § 52-251c. They found that the fee, as limited by the statute, was insufficient to cover the hours spent on the matter or to otherwise compensate them adequately. As a result, they have reluctantly decided to decline to take such complex, time consuming cases in the future. All of the attorneys were willing to become involved in pressing Salerno's claim if the contingency fee were the customary one third, but none of them would undertake the representation under the limitations of the fee cap statute. After speaking with these

attorneys, Salerno was quite satisfied with her fee agreement with Bieder and was anxious to proceed with her claim.

Salerno applied to the Probate Court for the district of North Branford for permission to enter into the 30 percent contingency fee agreement with Koskoff, Koskoff and Bieder. After a hearing, the Probate Court denied the application. The court found that Salerno had diligently attempted to obtain legal counsel who would undertake the litigation for a fee within the fee cap statute. The court acknowledged that Salerno questioned the constitutionality of the fee cap statute, but concluded that because the Probate Court was a court of limited jurisdiction, it must comply with the statute, § 52-251c, without regard to its validity or constitutionality. The application was, therefore, denied. Salerno then brought this action, appealing from the decision of the Probate Court.

In order to avoid a statute of limitations bar while this appeal was pending, Salerno filed a pro se complaint as conservatrix for her husband and on her own behalf seeking damages from the manufacturers of the chemicals to which Pasquale Salerno was exposed during his employment. The defendants in that action, represented by Day, Berry and Howard, Howd and Ludorf, and Cummings and Lockwood, removed the case to federal court. On July 1, 1992, Judge Nevas held a hearing on a motion to approve the proposed 30 percent fee agreement between Salerno and Koskoff, Koskoff and Bieder. He began the hearing by expressing his serious reservations as to the constitutionality of the fee cap statute, § 52-251c, but stating his preference that the issue be decided first in the state courts. He then questioned Salerno on the record about the fee agreement with Koskoff, Koskoff and Bieder and presented her with a waiver form, waiving all rights under § 52-251c. Salerno signed the waiver form and the court

then approved the fee agreement. In her testimony before this court, Salerno reaffirmed her intention that the waiver of her rights under the fee cap statute remain in effect.

Salerno now asks this court to find the fee cap statute, § 52-251c, unconstitutional or, in the alternative, to find that the benefit of the statute can be waived and has been effectively waived here. She has presented to the court a compelling case for declaring the statute unconstitutional. The facts presented provide an appropriate record for review of the issue, and counsel for Salerno have extensively briefed their constitutional claims, citing cases from other jurisdictions where similar statutory limitations on attorney's fees have been declared unconstitutional and overturned.

This court is bound, however, to resolve the present case on the alternative grounds of waiver. Constitutional issues are not to be considered by the court unless absolutely necessary to the decision of a case. *State* v. *DellaCamera,* 166 Conn. 557, 560–61, 353 A.2d 750 (1974); *Edelson* v. *Zoning Commission,* 2 Conn. App. 595, 600, 481 A.2d 421 (1984), citing *State* v. *Onofrio,* 179 Conn. 23, 38, 425 A.2d 560 (1979). "We have held on numerous occasions that the court will not pass upon a constitutional question if there is present some other ground upon which the case may be decided." *Hartford* v. *Powers,* 183 Conn. 76, 84–85, 438 A.2d 824 (1981). It must also be noted that in order to reach the constitutionality issue, the court would have to overcome the considerable authority holding that a Superior Court hearing a probate appeal sits as a Probate Court with the same limited powers of the Probate Court. *Gardner* v. *Balboni,* 218 Conn. 220, 225, 588 A.2d 634 (1991); *Prince* v. *Sheffield,* 158 Conn. 286, 293–94, 259 A.2d 621 (1969).

The general rule is that rights granted by statute may be waived unless the statute is intended to protect the general rights of the public rather than private rights. 28 Am. Jur. 2d, Estoppel and Waiver § 164 (1966). The Connecticut Supreme Court has adopted the general rule. "One cannot waive a public obligation created by statute . . . but he may waive a statutory requirement the purpose of which is to confer a private right or benefit." (Citation omitted.) *Hatch* v. *Merigold,* 119 Conn. 339, 343, 176 A. 266 (1935).

Statutes relating to litigation have been construed by the courts as conferring a private right that may be waived. The statute of limitations for tort actions is personal and may be waived. *Orticelli* v. *Powers,* 197 Conn. 9, 15–16, 495 A.2d 1023 (1985). The right to trial by jury may be waived. *Leahey* v. *Heasley,* 127 Conn. 332, 336, 16 A.2d 609 (1940). The defense of the statute of frauds may be waived. *Wolfe* v. *Wallingford Bank & Trust Co.,* 124 Conn. 507, 512–13, 1 A.2d 146 (1938).

The fee cap statute, enacted as part of the tort reform legislation adopted in 1986, clearly confers a private right on plaintiffs bringing tort actions. By limiting the attorney's fees of plaintiffs, the statute was intended to increase the portion of the judgment or settlement that was actually received by the plaintiffs. 29 S. Proc., Pt. 10, 1986 Sess., pp. 3465–66. The statute does not protect the general rights of the public. It confers a private right only on those who file tort actions. The fee cap statute therefore satisfies the general rule regarding when statutes can be waived.

The legislative history of § 52-251c reveals that the proponents of the statute acknowledged during the debate on the statute that its benefit could be waived. One state representative inquired whether a client could waive the fee cap provisions. Proponents of the statute conceded that it could be waived. One propo-

nent further stated that, under the statute, an attorney could not compel a client to pay amounts in excess of the maximum fees set forth in the statute, but the client could voluntarily waive his or her rights and pay a higher amount. 29 H.R. Proc., Pt. 16, 1986 Sess., pp. 5830–33.

The benefits of § 52-251c can be waived. The facts presented here demonstrate the propriety and necessity of the waiver in order that the Salernos have the opportunity to bring their claim. Salerno's waiver of the fee cap statute is valid. It is clear from her testimony before this court, as well as from her testimony before Judge Nevas in the federal court, that she understands her rights under the fee cap statute and that she has freely and voluntarily waived her rights under that statute. The court finds further that the proposed fee agreement is reasonable. This appeal is sustained and judgment is rendered that the application to enter into the fee agreement is hereby granted.