[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED APRIL 8, 1997 CT Page 3707
Attorney J. William Gagne ("the plaintiff") filed a four-count complaint on May 12, 1995 alleging the following facts. The plaintiff represented Richard M. Aldrich ("Aldrich") in connection with a personal injury claim. The plaintiff performed substantial work on the case and obtained a settlement offer of approximately $1.5 million from the principal defendant. The plaintiff informed Aldrich of the offer and Aldrich expressed disappointment over having to satisfy a workers' compensation lien. Aldrich subsequently dismissed the plaintiff and retained attorney Enrico Vaccaro ("the defendant"). Aldrich informed the plaintiff that the reason for the dismissal was the defendant's assurance that the workers' compensation lien would not have to be satisfied.
When retaining him, Aldrich told the defendant that the plaintiff had performed substantial work and deserved to be compensated; the defendant agreed to compensate the plaintiff out of any recovery from Aldrich's claim. The defendant subsequently settled the case for approximately $1.75 million. The defendant then refused to compensate the plaintiff for his work, arguing that the plaintiff did not have a written fee agreement with Aldrich. In count one, the plaintiff alleges that he is an intended third-party beneficiary of the written contract between Aldrich and the defendant. In counts two and three, the plaintiff alleges that the defendant has an independent obligation to compensate the plaintiff and that the defendant agreed to compensate the plaintiff.[1] In count four, the plaintiff alleges that the defendant was unjustly enriched by not compensating the plaintiff for his work.
The defendant filed an answer and special defenses on July 20, 1995, to which the plaintiff replied on August 4, 1995. The defendant filed a motion for summary judgment on August 8, 1996. The plaintiff filed a cross motion for summary judgment and memorandum in opposition on October 16, 1996. The defendant filed a memorandum in opposition to the plaintiff's motion for summary judgment on December 10, 1996. The court heard oral argument on January 6, 1997.
A motion for summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the CT Page 3708 moving party is entitled to judgment as a matter of law." Practice Book § 384. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . ." (Internal quotation marks omitted.) Home Ins. Co. v. Aetna Life Casualty Co.,235 Conn. 185, 202, 663 A.2d 1001 (1995).
"Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court . . ." (Citations omitted; internal quotation marks omitted.) Home Ins. Co. v. Aetna Life CasualtyCo., supra, 235 Conn. 202-03. "The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence." 2830 Whitney Avenue Corp. v. Heritage CanalDevelopment Associates, Inc., 33 Conn. App. 563, 567,636 A.2d 1377 (1994).
In his motion for summary judgment, the defendant argues that all four counts are barred on public policy grounds; counts one, two and three are barred because the defendant made no agreement to pay the plaintiff; and count four is barred because the plaintiff had no expectation to be paid by the defendant for services rendered. The defendant attaches the following supporting documents: (1) contingency fee agreement between Aldrich and the defendant; (2) bank statement of disputed attorneys fees and expenses held in trust for the parties; (3) certified affidavit of the defendant, dated July 31, 1996; and (4) narrative of deposition of the plaintiff. Also submitted is an affidavit of the defendant, dated December 2, 1996, attached to the defendant's memorandum in opposition to the plaintiff's cross motion for summary judgment.
The plaintiff counters that he is entitled to judgment as a matter of law because he is a third-party beneficiary to the agreement between Aldrich and the defendant; there is an express and/or implied contract between the plaintiff and the defendant; and the defendant was unjustly enriched by the work performed by the plaintiff. The plaintiff attaches the following supporting CT Page 3709 documents: (1) certified affidavit of Aldrich; (2) certified affidavit of the plaintiff, dated October 15, 1996; (3) partial copy of deposition of the defendant; (4) letter from the defendant to Aldrich; (5) letter from attorney representing principal defendant in Aldrich case to the defendant; and (6) letter from the defendant to the plaintiff.
To support his public policy argument, the defendant relies on the lack of a written fee agreement between Aldrich and the plaintiff.[2] The defendant refers to the public policy of protecting consumers in home improvement and auto repair as well as the opinion of the Superior Court in Silver v. Jacobs,
Superior Court, judicial district of New Haven, Docket No. 340640 (March 16, 1995, Gray, J.).[3] In that decision, Judge Gray held that the failure of the plaintiff attorney to obtain a written fee agreement as required under General Statutes §52-251c precluded the plaintiff from recovering attorneys' fees from a subsequently retained attorney. The defendant makes a broad public policy argument for the necessity of protecting clients from overreaching attorneys.
The plaintiff argues that Silver v. Jacobs,[4]43 Conn. App. 184 cert. denied, 239 Conn. 938 (1996), is erroneous and distinguishable. The plaintiff further argues that § 52-251c
can be waived by the client, as Aldrich has done by supporting the plaintiff's claim for recovery. The plaintiff also argues that the defendant acted in bad faith by misleading Aldrich about the workers' compensation lien and by denying that he was aware that no written fee agreement existed. As a result, the plaintiff concludes that the defendant is precluded from raising the lack of a written fee agreement in defense of the plaintiff's claim.
Silver v. Jacobs
Under General Statutes § 52-251c, a contingent fee agreement for a personal injury suit "shall comply with all applicable provisions of the rules of professional conduct . . ." General Statutes § 52-251c(a). The use of the word `shall' in the statute indicates that the requirement is mandatory rather than permissible. Statewide Grievance Committee v. Rozbicki,211 Conn. 232, 240, 558 A.2d 986 (1989). The Connecticut Rules of Professional Conduct state that "[a] contingent fee agreement shall be in writing . . ." Rules of Prof. Conduct 1.5(c).
The scope of the written fee agreement requirement was CT Page 3710 addressed in Silver v. Jacobs, 43 Conn. App. 184, cert. denied,239 Conn. 938 (1996). The Appellate Court rejected the argument that an oral contingency fee agreement might be valid. "The language of § 52-251c (a) clearly requires that all contingency fee agreements be reduced to writing." (Footnote omitted.) Silver v. Jacobs, supra, 43 Conn. App. 189. Referring to the public policy underlying home improvement and auto repair regulations, the court concluded that public policy considerations embodied in § 52-251c rendered an oral contingency agreement unenforceable. Id., 189-90.
While Silver v. Jacobs constitutes a broad rule precluding recovery for attorneys who violate § 52-251c, it is not a bar to plaintiff's recovery on all four counts. There are exceptions to its general application. Unlike the plaintiff in Silver v.Jacobs, the plaintiff here has argued that a bad-faith exception is applicable and that the protection of § 52-251c has been waived. Both of these concepts are consistent with the public policy enunciated in Silver v. Jacobs, particularly in view of that court's reliance on home improvement contract law.
The plaintiff has put forth a bad-faith argument which would preclude the defendant's reliance on the public policy underlying § 52-251c and Silver v. Jacobs. The Connecticut Supreme Court interpreted a similar public policy statute, General Statutes § 20-418 (Home Improvement Act) in Habetz v. Condon,224 Conn. 231, 618 A.2d 501 (1992). The court held that there was a bad-faith exception to the consumer's use of a defense of noncompliance with the Home Improvement Act. Id., 237 ("Proof of bad faith therefore serves to preclude the homeowner from hiding behind the protection of the act").
"The question is not whether the legislature specifically carved out this bad faith exception . . . but whether, in the absence of specific legislative indication otherwise, a doctrine founded on public policy and containing a strong strain of estoppel can prevent a misbehaving party from invoking the benefits of a statute which is absolute on its face." Habetz v.Condon, supra, 224 Conn. 240.[5]
This court perceives a bad-faith exception to the defense of § 52-251c where a successor attorney acts in bad faith and uses the defense to avoid compensating the original attorney. While the successor attorney is not the equivalent of the consumer in the home improvement context, the bad-faith exception CT Page 3711 still applies. The parallel to the protected party under the Home Improvement Act would be the client under § 52-251c, not the successor attorney. The successor attorney, however, is able to use § 52-251c as a defense to compensating the original attorney. If the statute can be used as a shield by the successor attorney, the bad faith exception should be equally applicable against the successor attorney. The court in Silver v. Jacobs,
having significantly borrowed from the jurisprudence of home improvement contract law, there is no reason to believe that at least in theory the aspects of that law which do not favor the defendant are no less applicable here.
The rationale of the bad-faith exception is particularly powerful as against the successor attorney. Allowing the homeowner to act in bad faith and hide behind the Home Improvement Act allows him to benefit from his bad-faith actions and indeed encourages such actions. Habetz v. Condon, supra,224 Conn. 237. Discouraging such bad-faith actions is especially important in the context of successor attorneys because of the risk of harm to clients. For instance, consider an attorney who acts in bad faith to lure a client away from a previous attorney. To allow this attorney to use § 52-251c as a defense to compensating the original attorney harms not only the original attorney, but also the client — the very party intended to be protected by the act. Thus, the bad-faith exception should be available against successor attorneys as a bar to using §52-251c as a defense.
The plaintiff contends that the defendant acted in bad faith in convincing Aldrich to switch attorneys on the strength of the defendant's assurances that he would not be responsible for satisfying a workers' compensation lien. (Complaint ¶ 13; Gagne Affidavit, October 15, 1996, ¶ 8.) The plaintiff also argues that the defendant acted in bad faith by promising to compensate the plaintiff after the defendant knew that there was no written fee agreement between the plaintiff and Aldrich, all the while intending to use the lack of a written fee agreement as a defense. (Gagne Affidavit, October 15, 1996 ¶ 14-16 and attached Exhibit E; Gagne Affidavit, January 17, 1997, ¶ 5-7.) Finally, the plaintiff argues that the defendant acted in bad faith by refusing to reimburse the plaintiff for expenses and by arguing that he was waiting for the written fee agreement between Aldrich and the plaintiff before reimbursement. (Vaccaro Affidavit, January 10, 1997, ¶ 14-21.) CT Page 3712
To counter the plaintiff's assertions, the defendant has submitted documents which dispute that the defendant acted in bad faith. The defendant states that he never told Aldrich that he would not have to pay the outstanding workers' compensation lien and that the terms of the settlement clearly reflect this. (Vaccaro Affidavit, January 10, 1997, ¶ 23 and attached Exhibit J.) The defendant also states that he did not know that no written fee agreement existed until the deposition of the plaintiff on July 24, 1995. (Vaccaro Affidavit, January 10, 1997, ¶ 4.) The defendant argues that he was not definitively aware that no written fee agreement existed when he wrote the letter to the plaintiff regarding reimbursement of expenses and that he did not promise compensation to the plaintiff while intending to use the lack of a written fee agreement as a defense. (Vaccaro Affidavit, January 10, 1997, ¶ 5-9.) Finally, the defendant argues that he acted in good faith with regard to reimbursing the plaintiff for expenses. (Vaccaro Affidavit, January 10, 1997, ¶ 10-22 and attached Exhibits A, C-I.)
The plaintiff has raised a genuine issue of material fact with regard to bad faith, distinguishing this case from Silver v.Jacobs. Thus, the defendant's motion for summary judgment cannot be granted on the ground that Silver v. Jacobs precludes recovery. Similarly, the defendant has provided documents which dispute the issue of bad faith on the part of the defendant. As a result, summary judgment on the ground of a bad-faith exception is also inappropriate with regard to the plaintiff's cross motion for summary judgment. "It is the burden of the party asserting the lack of good faith to establish its existence and whether that burden has been satisfied in a particular case is a question of fact." Habetz v. Condon, supra, 224 Conn. 237, n. 11. Thus, summary judgment is inappropriate with regard to good faith. Cf.Fink v. Olson, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 335948 (November 19, 1996) (Stevens, J.;18 CONN. L. RPTR. 259) (motion for summary judgment denied because allegations of bad faith on part of homeowner raise genuine issues of fact; allegations include that homeowner knew of contract's deficiency under Home Improvement Act but proceeded while intending to use deficiencies to avoid contract).
Silver v. Jacobs is also distinguishable due to the alleged waiver of the protection of § 52-251c by Aldrich. "The legislative history of § 52-251c reveals that the proponents of the statute acknowledged during the debate on the statute that its benefit could be waived." In re Estate of Salerno,
CT Page 371342 Conn. Sup. 526, 533, 630 A.2d 1386 (allowing waiver of fee cap).
The plaintiff has put forth documents supporting his argument that Aldrich has waived the protection of § 52-251c. Aldrich attests, "I relied upon and expected [the defendant] to pay [the plaintiff] a reasonable and appropriate portion of the total fees paid by me in order to compensate [the plaintiff] for the work he did . . . I leave it to the Connecticut courts to decide what amount would be reasonable and fair in this regard." (Aldrich Affidavit, ¶ 13.)
"The benefits of § 52-251c can be waived." In re Estateof Salerno, supra, 42 Conn. Sup. 534. Whether waiver exists here remains an unresolved issue of material fact. As a result, the present case is distinguishable from Silver v. Jacobs and the defendant's motion for summary judgment on the ground that Silverv. Jacobs precludes recovery is denied. The plaintiff's cross motion for summary judgment is also denied because genuine issues of material fact remain under each count, as discussed infra.
Count One: Third-Party Beneficiary
With regard to count one, the defendant first argues that even if a contract existed between Aldrich and the defendant making the plaintiff a third-party beneficiary, it is not enforceable because it offends public policy. According to the defendant, Silver v. Jacobs holds that public policy may not be contravened by any contractual relationship that violates §52-251c. The defendant reasons that just as an illegal contract cannot be the basis for a new agreement, a violation of public policy cannot be the basis for a valid third-party beneficiary contract here. The plaintiff contends that Silver v. Jacobs is distinguishable because it did not involve a third-party beneficiary.
As already stated, Silver v. Jacobs does not bar recovery as a matter of law under count one of the bad-faith exception and waiver. Furthermore, Silver v. Jacobs can be distinguished because the plaintiff is making a claim as a third-party beneficiary. The plaintiff alleges that he is an intended third-party beneficiary to the written contingency fee agreement between the defendant and Aldrich. This is distinct from the situation in Silver v. Jacobs, where the court held that an agreement between the original and predecessor attorneys was unenforceable. Silver v. Jacobs, supra, 43 Conn. App. 190-91. CT Page 3714
Here, there is a written contingency fee agreement between Aldrich and the defendant. (Defendant's Motion for Summary Judgment, Exhibit A.) The plaintiff alleges that a condition of this agreement was that the plaintiff was to be compensated out of the proceeds of the Aldrich case. (Complaint, ¶ 14-17; Aldrich Affidavit, ¶ 10-11.) It is this agreement which the plaintiff is seeking to enforce as a third-party beneficiary. This situation is different from that in Silver v. Jacobs and the plaintiff's recovery on a theory of third-party beneficiary is not precluded as a matter of law.
The defendant next argues that he made no "independent promise" to pay the plaintiff any portion of the fees recovered. That is, there is no "agreement by the defendant to pay [the] plaintiff a portion of the fee absent an established right to be paid by Aldrich." Defendant's Memorandum of Law in Support of Motion for Summary Judgment, p. 15. According to the defendant, an enforceable contingency fee agreement is a condition precedent to any obligation of the defendant. To further support this argument, the defendant draws an analogy to suretyship law to conclude that he can rely on any defense of Aldrich. Thus, the defendant concludes that he can raise Aldrich's defense of the lack of a written fee agreement to preclude the plaintiff's recovery.
Yet as discussed above, the bad-faith exception, waiver argument, and unique circumstances of this claim indicate that the defendant may not be able to use § 52-251c to prohibit the plaintiff's recovery. The defendant has not shown that a written contingent fee agreement is necessary to enforce the written fee agreement between Aldrich and the defendant that allegedly makes the plaintiff a third-party beneficiary. Thus, there has been no showing that the plaintiff cannot recover as a matter of law and the defendant's motion for summary judgment cannot be granted on this ground.
Finally, the defendant argues that even if he had promised to hold funds, there would be no enforceable agreement because of a failure of consideration. The defendant argues that there was no consideration for any promise to compensate the plaintiff as a third-party beneficiary or otherwise. The plaintiff, however, has asserted that such a promise was a condition of representing Aldrich. (Complaint, ¶ 14-17; Aldrich Affidavit, ¶ 10-11.) Having the opportunity to represent Aldrich, and obtaining a CT Page 3715 case file already at the point of a $1.5 million settlement offer, could arguably have been sufficient consideration for promising to compensate the plaintiff. Thus, the defendant has not shown that the plaintiff cannot recover under count one as a matter of law.
The plaintiff argues that the defendant has not raised an issue of fact as to the agreement between the defendant and Aldrich to compensate the plaintiff. The plaintiff argues that the defendant did not really deny the agreement in his affidavit of July 31, 1998. The defendant has unequivocally stated, however, that he "never agreed with Aldrich or Gagne to pay Gagne any fee whatsoever." (Vaccaro Affidavit, January 10, 1996, ¶ 8.) This clearly places the existence of the agreement between the parties in dispute. The terms of the agreement and the actual intent of the defendant and Aldrich in making the agreement is a question of fact not appropriate for summary judgment. As a result, both the defendant's and the plaintiff's motions for summary judgment are denied as to count one.
 Counts Two and Three: Agreement between the Parties
The defendant first argues that the plaintiff cannot recover under counts two and three because Silver v. Jacobs precludes recovery as a matter of law. The defendant denies that he promised to compensate the plaintiff, but contends that even if he had, the agreement would be unenforceable under public policy.
The Appellate Court in Silver v. Jacobs rejected the plaintiff's contention that a separate agreement between attorneys was enforceable. Under the agreement, the successor attorney was to hold the amount of money required by the contingency agreement between the clients and the original attorney. Since there was no written contingency agreement, the clients were under no legal obligation to pay the original attorney. Consequently, the successor attorney was under no obligation to hold any money for the original attorney. Silver v.Jacobs, supra, 43 Conn. App. 190-91.
Here, the defendant may be barred from using § 52-251c to render the underlying agreement between the plaintiff and Aldrich unenforceable. Because of the bad-faith exception or waiver, the plaintiff may have an enforceable agreement with Aldrich. If so, the defendant cannot avoid his promise to compensate the CT Page 3716 plaintiff.[6]
Second, the defendant avers that he never promised to compensate the plaintiff. (Vaccaro Affidavit, January 10, 1996, ¶ 8.) The plaintiff attests that he did. (Gagne Affidavit, January 17, 1997, ¶ 5-6.) Whether a promise to compensate for attorneys fees was actually made depends on the intent of the parties and interpretation of exchanges allegedly giving rise to an agreement. These are questions of fact that cannot be decided by summary judgment. Therefore, both the defendant's and the plaintiff's motions for summary judgment are denied as to counts two and three.
Count Four: Unjust Enrichment
The defendant argues that Silver v. Jacobs precludes recovery under quantum meruit or unjust enrichment. According to the defendant, the plaintiff cannot recover under unjust enrichment because recovery is barred on public policy and equitable grounds. The defendant contends that because the plaintiff failed to obtain a written fee agreement as required by statute and the rules of professional conduct, it would not be fair to allow him to recover.
In Silver v. Jacobs, the court rejected claims of unjust enrichment and quantum meruit. "It would be unjust to permit an attorney to avoid this public policy by splitting a fee with a successor attorney. Moreover, by enacting § 52-251c without qualification, the legislature has imposed its view that it is more urgent to protect clients from attorneys than to protect attorneys from successor attorneys . . . Because the plaintiff in this case has violated § 52-251c, thereby leaving his clients exposed to the possibility of excessive legal fees, the plaintiff may not recover from the successor counsel under equitable principles." (Citations omitted.) Silver v. Jacobs, supra,43 Conn. App. 192-93.
According to Silver v. Jacobs, the plaintiff here would be barred from recovery on its fourth claim of unjust enrichment.Silver v. Jacobs, however, is distinguishable due to the plaintiff's arguments of bad faith and waiver. The defendant has not proved that the plaintiff cannot recover under unjust enrichment as a matter of law.
The defendant also argues that quantum meruit is precluded CT Page 3717 because the plaintiff has not shown that he performed work on the Aldrich file in the expectation of payment by the defendant or that the defendant agreed to pay for such services. The defendant argues that these elements are necessary to recover under quantum meruit, as distinct from unjust enrichment. The plaintiff, though, has not stated a claim under quantum meruit; count four alleges only unjust enrichment. Thus, even if there is such a distinction, the defendant's argument is not relevant here.
The plaintiff argues that he has proved all the necessary elements of unjust enrichment such that he should recover as a matter of law. "The elements of unjust enrichment are well established. Plaintiffs . . . must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefit, and (3) that the failure of payment was to the plaintiffs' detriment." (Internal quotation marks omitted.) Ayotte Brothers Construction Co. v. Finney,42 Conn. App. 578, 581, 680 A.2d 330 (1996).
"The fact finder's finding of a failure to pay is insufficient for a finding of unjust enrichment. There must be a finding that the failure to pay was unjust." Spec Air Systems v.Allied Rawal, Inc., Superior Court, judicial district of New Haven, Docket No. 325696 (November 18, 1994) (Booth, J.;13 CONN. L. RPTR. 78, 79). "Connecticut courts have stated that all the facts of each case must be examined to determine whether the circumstances render it just or unjust, . . . to apply the doctrine of [unjust enrichment]." (Alteration in original; internal quotation marks omitted.) Id. Thus, whether the failure to pay the plaintiff for the benefit was unjust is a question of fact. Cf. Polverari v. Peatt, 29 Conn. App. 191, 201,614 A.2d 484, cert. denied, 224 Conn. 913 (1992).
The defendant's motion for summary judgment as to count four is denied because he has not proved that the plaintiff is precluded from recovery under unjust enrichment as a matter of law. The plaintiff's cross motion for summary judgment is also denied because the unjust nature of the defendant's refusal to compensate the plaintiff is a question of fact inappropriate for summary judgment.
Both the defendant's and the plaintiff's motions for summary judgment are denied. Silver v. Jacobs does not preclude the plaintiff's recovery as a matter of law because of the bad-faith exception and the potential for waiver. Nor do the defendant's CT Page 3718 other grounds for summary judgment show that there are no disputed facts and that the plaintiff is barred from recovery as a matter of law. Similarly, the plaintiff has failed to show that there are no genuine issues of material fact with regard to bad faith, the alleged agreements, and unjust enrichment.
LICARI, J.